EDWARD SIMMONS
v.
RICHARD STALDER, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; WARDEN BURL CAIN, ASSISTANT WARDEN SHIRLEY COODY, ASSISTANT WARDEN DAVID BONNETTE, DORA RABALAIS, JOHNNIE MAE JOHNSON, MELANIE BARTON, SERGEANT MCCOY AND LIEUTENANT CLARENCE MILLS
No. 2008 CA 2288.
Court of Appeals of Louisiana, First Circuit.
May 8, 2009.
Not Designated for Publication
EDWARD SIMMONS, Plaintiff/Appellant in Proper Person.
L. BRUCE DODD, TERRI L. CANNON, Counsel for Defendant/Appellee, Louisiana Department of Public Safety & Corrections
Before: CARTER, C.J., WHIPPLE, and DOWNING, JJ.
WHIPPLE, J.
Plaintiff, Edward Simmons, an inmate in the custody of the Louisiana Department of Public Safety and Corrections ("the Department") confined to the Louisiana State Penitentiary at Angola, Louisiana, appeals a judgment dismissing his petition for judicial review. Mr. Simmons initiated a lost property claim (#LSP-2004-0011) under the Corrections and Administrative Procedure Act, LSA-R.S. 15:1177, et seq., claiming that prison personnel were responsible for losing his personal property while he was transferred from the state penitentiary to Orleans Parish Prison on July 8, 2003. In the claim, Simmons sought compensation for the lost property, all legal fees and court costs paid by him, and a 30-day suspension of several named employees of the Department for their alleged negligence in losing his property. In response, the warden offered to reimburse Simmons $86.00 for various items of his personal property and to provide state-issue replacements of all clothing items and Bibles at issue in the claim. Dissatisfied with the reimbursement offer and administrative response by the Department, Simmons filed a petition for judicial review.
After twice remanding for completion of the administrative record, on November 27, 2007, the Commissioner rendered a report in which she recommended that the district court affirm the administration's reimbursement offer, but reverse, in part, to further award Simmons an additional $200.00 representing the value of four law books that were lost. In accordance with the Commissioner's Report, the district court rendered judgment on December 21, 2007, granting Simmons relief as recommended and otherwise dismissing the petition for judicial review with prejudice. Simmons then filed the instant appeal.
On appeal, Simmons argues that he was inadequately reimbursed, in that he was not fully compensated for all of his lost property, specifically, "legal material" that was allegedly contained in a laundry bag. In support thereof, Simmons relies upon a recent listing and estimate of replacement costs for the legal material he contends was contained in the laundry bag. Although the estimate was attached to his brief to the Commissioner and to this Court on appeal, the estimate is not contained in nor does it form part of the administrative record on review.
As noted by the Commissioner in her thorough and well-reasoned report, which we adopt herein as our own and attach hereto as "Exhibit A":
It appears that the Petitioner has filed a copy of a much more recent estimate of replacement costs for the unidentified legal documents allegedly in the bag, but this Court is bound by the administrative record alone and the Petitioner was given every opportunity by the Court to amend his complaint, refile it and to submit any additional or excluded evidence to the Warden to have this matter fully considered by the administration so that a clean and complete administrative record could be presented to this Court for a fair determination. However, the administrative record, even after two remands, does not contain proper identification by the Petitioner of the `legal material' lost or the value of any of the items lost. The Court is bound by the administrative record and cannot consider additional evidence at the appellate level.
The record reveals that Simmons was given the opportunity, on two prior occasions on remand, to present evidence regarding the nature of these items and their replacement cost, but did not do so. The administrative record was closed and submitted for consideration on July 25, 2007. Thus, any evidence submitted after July 25, 2007, can not be considered. See Curry v. Cain, 2005-2251 (La. App. 1st Cir. 10/6/06), 944 So. 2d 635, 639. Thus, we reject any claim related to the "legal material."
Furthermore, we find no merit to Simmons' complaint that the reimbursement ordered for his other personal items was insufficient, considering that Simmons did not file any additional evidence to establish or contradict the valuation of his personal items set forth in the administrative record. Accordingly, we find no basis for concluding the Department's valuation was arbitrary or capricious. Thus, after careful review, and for the reasons set forth herein by the Commissioner, we likewise find no merit to this argument.
Finally, we reject Simmons' argument that the loss of his property due to the negligence of the Department's employees, and the failure of the Department to maintain records of the transfer of his property, rises to a constitutional violation of his 14th Amendment rights and deprives him of due process. Lost property claims are classic matters of prison administration or conditions of confinement and a generic lost property claim does not rise to constitutional dimensions. See Vincent v. State, Department of Public Safety and Corrections, 2002-2444 (La. App. 1st Cir. 6/6/03), 858 So. 2d 494, 496-497; see ajso Curry v. Cain, 944 So. 2d at 639-640. Thus, we also find no merit to this argument.

CONCLUSION
After a thorough review of the record before us, we find the evidence supports the judgment of the district court, rendered in accordance with the recommendation of the Commissioner, which we adopt herein as our own. Thus, the December 21, 2007 judgment of the district court, dismissing Mr. Simmons' petition for judicial review of administrative remedy procedure with prejudice, is hereby affirmed.
All costs of this appeal are assessed to plaintiff/appellant, Edward Simmons.
AFFIRMED.

Exhibit "A"
EDWARD SIMMONS NUMBER: 529,283 SECTION 27
 19th JUDICIAL DISTRICT COURT
VERSUS
 PARISH OF EAST BATON ROUGE 
DEPT. OF CORRECTIONS, ET AL STATE OF LOUISIANA

COMMISSIONER'S REPORT
The Petitioner, an inmate in the custody of the Department of Public Safety and Corrections, filed this appeal of three separate administrative claims (LSP-03-2660, 0411 and 04-0286), seeking review in accordance with R.S. 15:1171 et seq. The law only allows a single administrative record to be appealed in a single suit for review, and this Court dismissed the appeals herein of all except LSP-04-11, which the Petitioner identified in open court on July 7, 2005 as the one he wanted to pursue.[1] note that one of the administrative records noted was filed a duplicate complaint, but neither grievance went past the first step at the time the appeal was filed because the warden did not respond to either complaint and the Petitioner did not move on to the Secretary's level, as allowed by the Rules, which would have facilitated exhaustion.
The complaint in LSP-04-11 involves several items of property lost on or about July 3, 2003. The Petitioner seeks compensation for the lost property and a 30-day suspension for several named DOC employees for alleged negligence in losing the property.
The Department filed the administrative record as Exh. A, the original incomplete record. Thereafter, the Court ordered a supplement to include the final agency decision and although a supplement was filed as Exh. B, it did not contain a final agency decision or any of indication that the Petitioner had submitted evidence in support of this claim. The order noted that essential items were "either not provided by the Petitioner or not included in the record by the Department."[2] The order also included notice to the Petitioner that it was his burden to show "proof of the items lost and the approximate value thereof."[3] The Department belatedly filed the supplement Exh. B, which is marked and in the record for review, but does not contain any 2003 or prior dated inventory sheets for the Petitioner, as the Court requested, nor any evidence that is a part of this complaint, it would seem.[4] Thereafter, the Court issued a second stay, ordering the Department and the Petitioner to provide the Court with the evidence offered in the administrative record in support of the claim, and likewise giving the Petitioner an additional 10 days to submit any additional evidence of inventory sheets that he failed to provide to the Department that would show what property he owned between July 8, 2003 and December 2003 and any proof of value and loss of the certain property. The Court once again noted in the Order that "there is no proof in the record to show precisely what items were lost or what the value of each is alleged to be."[5] Again the Court noted that there did not appear to be a final agency decision, and thus, no showing of subject matter jurisdiction in this Court, and that though the Petitioner had apparently attempted throughout the years to obtain relief, he did not apparendybased on the record, follows the Department's rules in that regard. The Court finally noted that although the inventory sheets that are essential to fairly consider this claim were previously ordered to be put in the administrative recordeither by the DOC, if they had copies, or by the Petitioner as part of his burdenExh. B did not include the inventory sheets that the Petitioner claimed he had copies of and there was no explanation in the ARP of why none were included in Exh. B. The Second Remand order notified both parties of the Court's dissatisfaction with the Administrative record in that it appeared to be incomplete and confusing, and included no proof of exhaustion or itemization of property or proof of value of the items lost. The Court, by that order, then authorized the Petitioner to amend his initial request for remedies "to provide the Warden's office with any proof of the cost of replacement...within 10 days" and that the Department was to issue a final decision and submit the final inclusive record to the Court for review of this property claim.
The Department submitted the final, closed administrative record to this Court on July 25, 2007, which is marked in the record as Exh. C, for the Court's final review.
Having previously entertained oral argument early on, and having received several briefs from the Petitioner through the progress of the appeal, both parties were finally notified of their right to file any additional briefs in support of their positions and any filed have been considered and are in the record for consideration.
This report is issued on the record alone, as supplemented twice, for the Court's de novo review and adjudication of the merits of the Petitioner's claim.

ANALYSIS OF THE FACTS AND THE LAW
The scope of this Court's review is limited by RS. 15:1177) (5) & (9), which states, in pertinent part, as follow:
"(5) The review shall be conducted by the Court without a jury and shall be confined to the record. The review shall be limited to the issues presented in the petition for review and the admmistrative remedy request filed at the agency level.

* * * * *
(9) The court may reverse or modify the decision only if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
a. In violation of constitutional or statutory provisions;
b. In excess of the statutory authority of the Agency;
c. Made upon unlawful procedure;
d. Affected by other error of law;
e. Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or
f. Manifesdy erroneous in view of the reliable, probative and substantial evidence on the whole record." (emphasis added).
IN this case, the claim is that several items of property were lost by the prison personnel on or about July 7, 2003, when the Petitioner returned from Orleans Parish for Court and his property had been stored in his absence, ostensibly in Camp J of the prison at Angola. Through the voluminous and rather confusing record, it appears clear that the prison personnel lost some, if not all, of the property that was stored on or about July 7, 2003. However, the problem lies in the lack of proof or identification of the particular property the Petitioner owned at that time in 2003; what was actually lost from his property, finally, what the value or cost of each particular item lost was.
Frankly, the only reason that this Court can find that personnel lost some property is by their own admission in the record, as the evidence in the record of what property existed and what property was lost is almost non-existent, and is dependent entirely on the single inventory sheet of 7/8/03 in the administrative record.[6] That sheet shows the following items were stored on that date when the property was transferred from Gator 2 to Bass storage:
 1. 2 shirts
 2. 2 tee shirts
 3. 3 under shorts
 4. 1 socks
 5. 8 towels
 6. 2 books/bibles
 7. 5 items of cosmetics
 8. 30 letters
 9. 28 photographs
 10. 1 scarf
 11. Miscellaneouslaundry bag, legal material, and 4 law books.[7]
Ordinarily, the inventory sheet contains an "intake" date and a date that the prisoner signs for return of his property, but in this case, there is no delivery date at all, and the property seems to have disappeared.
The Department's promulgated rules about lost property claims state the following in part:
"The purpose of this Section is to establish a uniform procedure for handling lost property claims' filed by individuals in the custody of the Department. All wardens...are responsible for implementing and advising offenders and affected employees of its contents.
1. When an offender suffers a loss... he may submit a claim.... The claim must include the date the loss occurred, a full statement of the circumstances which resulted in the loss, a list of the items which are missing, the value of each lost item, and any proof of ownership or value of person property must be submitted to the warden within 10 days of discovery of the loss.

a. Under no circumstances will an offender be compensated for an unsubstantiated loss...or for any loss resulting from bartering, trading, selling to or gambling with other offenders.
2. The warden ...will assign an employee to investigate.... who will submit his investigation report and recommendation to the warden....
3. If a loss ...occurs through negligence of the institution and/or its employee, the offender's claim may be processed in accordance with the following procedures.
a. Monetary
i. The warden...will recommend a reasonable value for the lost person property... The maximum liability for certain classes of items is established at $50 per DOC regulation 30-22.
* * * * * * * * * * * 8
b. Non-Monetary
i. The offender is entitled to only state issue where state-issued items are available...
In this case the Petitioner initially complained that the administration had lost the following property: a laundry bag of legal material; (4) law books; (5) cosmetics; (30) personal letters; (2) bibles; (2) sheets; (2) tee shirts and (1) scarf. He offered no allegation of value and based his proof of ownership on the inventory sheets of July 8, 2003 which became a part of the administrative record only in 2007 and the inventory of March 8, 2003which is nor in the record and has never been offered into the administrative record to the Court's knowledge.[8]
After investigation in 2004 and again in 2007, after final remand for consideration, the administration apparently affirmed that the items listed on that July 2003 inventory (which exceed those listed in the Petitioner's initial complaint to personnel) were lost through fault prison personnel[9]. In accordance with the Property Rules, the Warden then offered the Petitioner state issued items to replace all of the clothing items listed in the inventory sheet, as well as an additional $86-$36 for itemized losses of cosmetics ($6.93); 30 letters ($15); 28 photos ($9.80), 1 scarf ($5) and the maximum of $50 to cover all legal materials, which were not itemized in the administrative record.[10] There is no indication in the administrative record where the "value" assigned to the items was derived from, but since the Petitioner did not file any additional valuation in the administrative record as ordered authorized by the Court, the Court has no reason to believe that this valuation is arbitrary or manifestly erroneous.[11]
However, the Court notes that there is no compensation for the 4 law books listed on the inventory sheet. In the initial decision and offer by the Warden in 2004 (#exh. A), the Warden found then that since there was no record by the prison Mail Room that the Petitioner had received any law books through the mail while at Angola, he refused to offer any recompense for themeven though obviously 4 law books were in his possession in July 2003, when the property was stored and lost, because prison personnel specifically logged them in on the inventory.[12] Also, the Warden noted that because the Petitioner did not state whether the 2 bibles were state issue or personal, he would have the Chaplain replace them with State issue Bibles. (The Warden is correct that there is no mention by the Petitioner in the admmistrative record that the bibles were other than state issue. Additionally, it is unknown from the record whether the Petitioner received or accepted the Bibles from the Chaplain, as there is no record that the Warden's offer of recompense was ever accepted by the Petitioner and some evidence in the record that he refused the offerat least following oral argument in 2005.
This Court is bound by the administrative recordpoor as it is. The administrative record in Exh. A is clear that items of property were lost when it was stored on behalf of the Petitioner.[13] The record does not precisely identify the items lost, as the Petitioner only listed the items in general as above quoted and apparently never provided proof of value of any particular items. The burden of proof in on the Petitioner to show in the administrative recordwhat he owned, what he lost, and the value of each item lost. He has shown that he owned certain items of clothing and books and owned some unidentified "legal material), but has failed to show the value of any items lost or even what precise items of "legal material" he lost. He was given opportunities by this Court to expand the record and resubmit proper evidence to the Warden, but the record continues to show that he has failed to do so. The final expansion to the administrative record in Exh. C includes an affidavit by prison administrative program managerTrish Fosterwherein she states that she requested from personnel the Petitioner's property purchase records and banking records to determine if there was any evidence to identify the legal items lost and/or to assign any value to them based on his payment for them.[14] She found that there is no record of any 2002 inventory of property upon Mr. Simmons' coming to Angola and no record of any March 8, 2003 inventory sheet. She stated that "LSP Legal Programs Department is tasked with accepting and sending Court transcripts to inmates, logging their requests for copies of transcripts and returning these documents to the Court" and that her review of that log shows no receipt or delivery of any transcripts to the Petitioner from 2002-the date he came to Angola until the date of loss in July 2003. This was confirmed by her finding from inmate banking that there was no record of payments for any legal materials during that period either.[15]
Therefore, given the dearth of evidence to support a claim for more, the administrative decision to offer $86 for the itemized personal property and unidentified generic "legal material", together with state issue replacement of all clothing items and Bibles, is not arbitrary or manifestly erroneous and should be affirmed by this court. However, in addition to that recompense, I also find that the decision to refuse to give recompense for the 4 law books, when the Petitioner clearly owned four on the July 2003 date of inventory is arbitrary and capricious and violates the Petitioner's right to be recompensed for personal property lost through no fault of his own. While there is no evidence in the record to show what the value or condition of each was, it is reasonable to assume that each book would have cost at least $50, and thus, I recommend that the Department be required to pay him the maximum under its rules for each of the four books$200, in addition to the prior offer of $86 and state issue replacements of clothing and bibles. Should the Court agree, my recommendation follows.

COMMISSIONER'S RECOMMENDATION
Having carefully considered the entire administrative record, as supplemented and the arguments of the parties, and finding that the administrative records are less than satisfactory for an accurate determination of the issues, for the reasons stated hereinabove, I recommend that the Court affirm in part and reverse in part the Secretary's decision. I further recommend that the Court issue judgment in favor of the Petitioner, ordering the Department to pay to the Petitioner the total sum of $286.00 and to replace all clothing items listed on the July 8,2003 inventory and two bibles with State-issue items. Finally, I recommend that this appeal be dismissed with prejudice at the Department's costs.
Respectfully recommended this 27th day of November 2007 in Baton Rouge, Louisiana.
NOTES
[1] See Lightfoot v. Stalder.
[2] See Order dated 2/1/2006.
[3] Id.
[4] See Response to Order with attached affidavit and three 2005 inventory sheets, which affidavit is dated 6/30/06, marked as Exh. B in globo.
[5] See Order dated 12/18/06.
[6] See Exh. C
[7] Id.
[8] See lost property claims in Exh. A, dated 12/12/03 and January 12/2004.
[9] See Warden's first decision dated 12/20/04 and the final decision dated 6/20 2007 by the Secretary, affirming the Warden's recommendation.
[10] Id.
[11] It appears that the Petitioner has filed a copy of a much more recent estimate of replacement costs for the unidentified legal documents allegedly in the bag, but this Court is bound by the administrative record alone and the Petitioner was given every opportunity by the Court to amend his complaint, refile it and to submit any additional or excluded evidence to the Warden to have this matter fully considered by the administration so that a clean and complete administrative record could be presented to this Court for a fair determination. However, the administrative record, even after two remands, does not contain proper identification by the Petitioner of the "legal material" lost or of the value of any of the items lost. The Court is bound by the administrative record and cannot consider additional evidence at the appellate level.
[12] See Exh. C, the July inventory sheet.
[13] See memos dated May 27, 2004 in Exh. A, as well as a handwritten statement of David Jones, prison employee.
[14] See Exh. C affidavit dated July 16, 2007.
[15] Id.